## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **LOUIS DARRELL BUCK,** | : |
| | : |
| **Petitioner,** | : |
| | : |
| **V.** | : **CRIMINAL NO. 14-00227-KD-B** |
| | : **CIVIL ACTION NO. 16-00387-KD-B** |
| | : |
| **UNITED STATES OF AMERICA,** | : |
| | : |
| **Respondent.** | : |

### REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Louis Darrell Buck's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (doc. 120), the Government's response in opposition (doc. 126), and Buck's reply (Doc. 130).[1]

This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration.[2]  Having

---

[1] Also pending before the Court are Buck's Motions for Grant of Bail Pending Decision on § 2255 Motion. (Docs. 127, 137, 143).  These motions are MOOT in light of the instant Report and Recommendation.

[2] The Honorable Chief United States District Judge Kristi K. DuBose and the Honorable United States District Judge William H. Steele presided over the proceedings in this action.  The undersigned has reviewed Buck's motion and all other pertinent documents in the court file, and has fully familiarized herself with the proceedings before Judge DuBose and Judge Steele.

carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[3]  Upon consideration, the undersigned hereby recommends that Buck's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 be DENIED, that this action be DISMISSED, and that judgment be entered in favor of the United States of America, and against Petitioner, Louis Darrell Buck.  The undersigned also recommends that should Buck file a certificate of appealability, it should be denied, as he is not entitled to appeal *in forma pauperis*.

## I. PROCEDURAL BACKGROUND

Petitioner Louis Darrell Buck was indicted on August 28, 2014, for conspiracy to possess with intent to distribute a Schedule I Controlled Substance, in violation of 21 U.S.C. § 846 (count 1);[4] possession with intent to distribute a Scheduled I Controlled Substance, in violation of 21 U.S.C § 841(a)(1) (count 2); being a felon in possession of a firearm, in violation of 18 U.S.C. §

---

[3] A district court is not required to hold an evidentiary hearing for patently frivolous claims, claims which are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record.  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989).

[4] The Schedule I Controlled Substance listed in the indictment was AB-FUBINACA.

922(g)(count 3); and using, carrying, or possessing a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(count 5). (Doc. 1).[5]

Buck was appointed counsel and was arraigned on March 26, 2016. (Docs. 36, 39). On June 29, 2016, Buck appeared with counsel before Honorable Judge Steele, and entered a counseled guilty plea to counts 1 and 5 of the indictment. (Docs. 90, 91). During the guilty plea colloquy, Buck testified under oath, as follows:

> Court: Have each of you received a copy of the indictment in your case, had a full opportunity to read it and review it with your attorney, and do you fully understand the charge or charges contained in the indictment . . . Mr. Buck?
>
> Defendant: Yes, Your Honor.
>
> Court: Are each of you fully satisfied with the representation that you have received from your attorney in this case and have you fully discussed with your attorney all of the facts surrounding the charge . . . Mr. Buck?
>
> Defendant: Yes, Your Honor . . .
>
> Court: All right. Now, I've been furnished a written plea agreement in each of your cases. This plea agreement appears to have your signature in a couple of places -- at the end of the plea agreement and also at the end of the factual

---

[5] Count four was a felon in possession charge against Buck's co-defendant, William Charles Callahan. (Doc. 1). Callahan entered a counseled guilty plea on January 28, 2015, to counts 4 and 5 and was sentenced on September 4, 2015. (Doc. 106).

resume.  Did you, in fact, sign the document? . .
. Mr. Buck?

Defendant: Yes, Your Honor . . .

Court: By signing the document, you are acknowledging
that you received a copy of it, that you've had an
opportunity to read it and review it with your
attorney, that you fully understand the terms and
conditions of the plea agreement and the factual
resume, and that you agree with it.  Is that true? . .
Mr. Buck?

Defendant: Yes, Your Honor.

Court: Have there been any promises made to you by
anyone or has anyone attempted in any way to force you
to plead guilty or to pressure you or threaten you in
any way? . . . Mr. Buck?

Defendant: No, Your Honor.

Court: Now, the penalties that could be imposed, if
convicted, of the counts to which you are pleading
guilty are outlined in the plea agreement . . . Mr.
Buck, if convicted of Counts 1 and 5 of the indictment,
you could receive a term of imprisonment, as to Count
1, up to 20 years, a fine not to exceed 1 million,
supervised release term up to 3 years, mandatory
special assessment of $100, and criminal forfeiture of
property.

     As to Count 5, you could receive a term of
imprisonment of no less than 5 years consecutive to the
sentence in Count 1 up to life in prison, a fine not to
exceed $250,000, supervised release term up to 5 years,
a mandatory special assessment of $100, and criminal
forfeiture of firearms.  Do you understand that?

Defendant: Yes, Your Honor . . .

Court: The way in which the sentencing guidelines apply
to your case might be affected by what you say to the
Court and to the probation officer.  The Court will not
be able to determine an appropriate sentence for your
case until after a presentence report has been
completed and you and the United States have had an

opportunity to challenge the facts reported by the probation officer.

The sentence imposed might be different from any estimate your attorney or anyone else might have given. After it has been determined what guideline applies to a case, the judge has the authority to impose a sentence that is more severe or less severe than the sentence called for in the guidelines. Do you understand that? . . . Mr. Buck?

Defendant: Yes, sir.

The Court: Also, if the sentence is more severe than you expected or if the judge does not accept the sentencing recommendation in your plea agreement, you'll still be bound by your plea. Even if you do not like the sentence imposed by the Court, you will not be able to withdraw your plea. The time to make that decision is now. Do you understand that . . . Mr. Buck?

Defendant: [Nods head.].

Court: Under some circumstances you and the United States each may have the right to appeal any sentence the judge imposes. You also have the right to waive your right to appeal, and I see by your plea agreement that you are waiving your right to appeal any sentence imposed with the following exceptions: And that would be any punishment in excess of the statutory maximum, any punishment constituting an upward departure of the guideline range, and any claim of ineffective assistance of counsel. Do you understand that? . . . Mr. Buck?

Defendant: Yes, Your honor . . .

Court: And for Mr. Buck, the factual resume in your case has a statement of the elements of the offense charged in Counts 1 and 5 of the indictment. Count 1 Charging a violation of Title 21 United States Code Section 846, conspiracy to possess with intent to distribute a Schedule I controlled substance.

The elements are that two or more individuals came to a mutual understanding to commit an unlawful act, in

this case the possession with intent to distribute a controlled substance, and that you, knowing of the unlawful purpose of the plan, knowingly and intentionally joined in the plan.

Count 5 charging a violation of Title 18 United States Code Section 924(c)(1)(A), using and carrying and possessing a firearm in furtherance of and in relation to a drug trafficking offense.

The elements of that offense are that you committed the drug trafficking charge -- the drug trafficking crime charged in the indictment, that you knowingly used, carried or possessed a firearm, and that you used the firearm in relation to or carried the firearm in relation to or possessed the firearm in furtherance of the drug trafficking offense.

Do you understand that those are the elements of the offense to which you are pleading guilty, Mr. Buck?

Defendant: Yes, Sir, Your Honor.

Court: Also, there's a statement of offense conduct. Did you, in fact, commit the acts and do the things that you have admitted doing in this statement?

Defendant: Yes, Sir. Your Honor.

Court: Then I find that the facts and acts to which you have admitted support a violation of the charges contained in Counts 1 and 5 of the indictment. How do you now plead to those charges: Guilty or not guilty?

Defendant: Guilty, Your Honor.

Court: And it is the finding of this Court in the case of the United States versus . . . Louis Darnell Buck, that each of you are fully competent and capable of entering an informed plea, that you are aware of the nature of the charges and the consequences of the plea, that your plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Your plea is, therefore, accepted, and each of you are now adjudged guilty of that offense.

(Doc. 142).

On October 30, 2015, the Court sentenced Buck to a prison term of 57 months on count 1 and a prison term of 60 months on count 5, to run consecutively. (Doc. 116). Buck did not file a direct appeal. Buck filed the instant § 2255 motion on July 18, 2016. (Doc. 120). In his motion, Buck contends that his counsel was ineffective because he failed to tell him that he had a proper defense, namely that he was not aware that the substance, AB-FUBINACA, or "spice," was illegal. (Id. at 20). He also contends that his plea to the gun charge was not knowing and voluntary because of ineffective assistance of counsel. (Id. at 21). According to Buck, his attorney was ineffective because he did not have Buck's co-defendant, Callahan, testify at the suppression hearing that Buck was not aware of the firearm. Buck also argues that he is innocent, and that he was "adversely prejudiced" by prosecution misconduct. (Id. at 21-22). Buck contends that the prosecution improperly threatened Callahan and, as a result, Callahan refused to testify on Buck's behalf at his suppression hearing. (Id. at 22-23).

The Government filed a response in opposition on October 12, 2016. (Doc. 126). The Government argues that

Buck's claims are procedurally defaulted because he did not raise the validity of his guilty plea on direct appeal. (Id.). The Government also argues that Buck cannot meet the actual innocence exception. (Id.). In his response (doc. 130), Buck reiterates the claims raised in his original petition and argues that he is actually innocent of the firearm charge because he was not aware of the presence of the firearm.

## II. HABEAS STANDARD

The limited scope of habeas relief is well established: collateral relief is an extraordinary remedy which "may not do service for a[] [direct]appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164.

"Relief under 28 U.S. C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." Bryant v. United States, 2014 U.S.

Dist. LEXIS 16202, 2014 WL 519619 at *7 (N.D. Ala. Feb. 10, 2014) (quoting Richards v. United States, 837 F. 2d 965, 966 (11th Cir. 1988) and citing LeCroy v. United States, 739 F.3d 1297, 1321 (11th Cir. 2014) and Greene v. United States, 880 F.2d 1299, 1301 (11th Cir. 1989) (internal quotations and citations omitted).

The Eleventh Circuit has explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (quotation omitted). Where the court's plea colloquy addresses each of the aforementioned "core principles," a finding that the guilty plea was voluntary and knowing is appropriate. Moriarty, 429 F.3d at 1019. Additionally, when a habeas petitioner has been convicted based on a plea of guilty and he makes "statements under oath at a plea colloquy, "'he bears a heavy burden to show his statements were false.'" Wintrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (quoting United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam). A petitioner's "solemn declarations in open court

carry a strong presumption of verity." Winthrop-Redin, 767 F.3d at 1217 (quoting Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977)).

Also, a petitioner's guilty plea waives all but certain, well-defined claims:

> After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise [1] jurisdictional issues, United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003, cert. denied, 540 U.S. 1149, 124 S. Ct. 1146, 157 L. Ed. 2d 1042 (2004), [2] attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973), Wilson v. United States, 962 F. 2d 996, 997 (11th Cir. 1992), or [3] challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986). In other words, a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984). A guilty plea must therefore stand unless induced by misrepresentation made to the accused person by the court, prosecutor, or his own counsel. Mabry, 467 U.S. at 507, quoting Brady v. United States, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747.

Caceres v. United States, 2014 U.S. Dist. LEXIS 156424, 2014 WL 5761112 at *8 (S.D. Fla. Nov. 5, 2014).

In this case, Buck seeks to avoid his guilty plea and plea agreement by alleging that his plea was not knowing and voluntary because his counsel rendered ineffective assistance of counsel. In Strickland v. Washington, the Supreme Court adopted a two-prong standard for evaluating claims of ineffective assistance of counsel. Strickland, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To satisfy the requirements of this two-prong standard, "[a] petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (citing Strickland, 466 U.S. at 687). Because the failure to demonstrate either deficient performance or prejudice is dispositive of the claim, courts applying the Strickland test "are free to dispose of ineffectiveness claims on either of [Strickland's] two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998).

In order to satisfy the "performance" prong of the Strickland test, a petitioner is required to show that his attorney's representation "fell below an objective standard of reasonableness," which is measured by "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. That is, a petitioner must show that "counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In considering such a claim, the court "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted). Thus, a petitioner has a difficult burden because, to be considered unreasonable, "the performance must be such that no competent counsel would have taken the action that [the petitioner's] counsel did take." Ball v. United States, 271 F. App'x 880, 883 (11th Cir. 2008) (citations omitted).

In order to satisfy the "prejudice" prong of the Strickland test, a petitioner must show that a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The petitioner "must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'" Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted). Further, it is

not enough to merely show that the alleged errors affected the case in some imaginable way. Id. at 1293-94 ("[T]hat the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice") (quoting Strickland, 466 U.S. at 693) (internal quotation marks omitted). Thus, "under the exacting rules and presumptions set forth in Strickland, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" Windom v. Sec'y, Dep't of Corr., 578 F.3d 1227, 1248 (11th Cir. 2009) (citations omitted). When a petitioner's conviction is based on a guilty plea, in order to show prejudice, he must show that there is a reasonable probability that, but for counsel's mistakes, he would not have entered a guilty plea, but would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); Esslinger v. Davis, 44 F.3d 1515, 1529 (11th Cir. 1995).

### III. DISCUSSION

#### A. Ineffective Assistance

As noted *supra*, Buck claims that his counsel was ineffective because he neglected to advise him that his purported lack of knowledge that AB-FUBINACA ("spice") was illegal was a defense to the drug conspiracy charge. Buck's

claim is clearly contradicted by the record. First, at the guilty plea colloquy conducted on June 29, 2015, Judge Steele questioned Buck under oath regarding his satisfaction with his counsel, and Buck confirmed that his counsel had gone over the indictment and plea agreement with him, and that he was pleased with counsel's representation. (Doc. 142 at 5-7). He also discussed with Buck in clear terms the charges to which he was pleading guilty, as well as the maximum penalty that might be imposed in the event of his conviction. Buck testified that he understood the charges and the potential maximum penalties. (Id. at 8).

Additionally, Judge Steele advised Buck of the specific elements the Government was required to establish a violation of 21 U.S.C. § 846, drug conspiracy; and 18 U.S.C. § 924(c)(1)(A) and 2, knowingly possessing, using; and carrying a firearm in relation to a drug trafficking crime. (Id. at 16). The Court expressly advised Buck that to establish such a drug conspiracy, "two or more individuals must come to a mutual understanding to commit an unlawful act, in this case the possession with intent to distribute a controlled substance, and that you, *knowing* of the *unlawful purpose of the plan,* knowingly and intentionally joined in

the plan."[6] (Id.) (emphasis added).  This statement clearly
placed Buck on notice that the Government was required to
establish that he knew of the unlawfulness of the plan to
distribute a controlled substance, and that he knowingly
reached an agreement with his co-defendant to join said
unlawful plan.  Thus, assuming *arguendo* that Buck's counsel
failed to tell him that his purported lack of knowledge
regarding the unlawfulness of the spice distribution could
be used as a defense, he suffered no prejudice because the
Court expressly advised him, during the guilty plea
colloquy, that the conspiracy claim required that he know of
the unlawful purpose of the plan, namely the unlawful
distribution of a controlled substance, and that he
knowingly joined said plan.

Further, under oath, Buck admitted that the facts set
forth in the factual resume were true and correct.  (Doc.
142 at 17).  The factual resume reflects that Buck and his
co-defendant Callahan were arrested on February 19, 2014
after a drug sniffing dog alerted to the presence of drugs
in the car, and a search of the vehicle revealed 300 packs

---

[6] The Court also informed Buck that the 924 charge required
"that you knowingly used, carried or possessed a firearm,
and that you used the firearm in relation to or carried the
firearm in relation to or possessed the firearm in
furtherance of the drug trafficking offense. (Doc. 142 at
16).

of synthetic cannabinoids packaged in a manner for distribution (in a box in the back seat of the car) and a Glock 27 .40 caliber handgun under the passenger's seat. (Doc. 90 at 16-17). The information provided to Buck during the plea colloquy regarding the elements of a drug conspiracy, including knowledge of the illegal plan to distribute a controlled substance, and the facts in the factual resume, which Buck confirmed were true, clearly support Buck's conviction for drug conspiracy. Additionally, Buck's ineffective assistance claim, based on his purported lack of knowledge concerning the illegality of the drugs at issue, is belied by the guilty plea colloquy.

Buck's contention that his counsel was ineffective because he was not able to secure his co-defendant's testimony at his suppression hearing is also without merit. According to Buck, his co-defendant, William Callahan, was prepared to testify that Buck had no knowledge of the firearm; however, the prosecution allegedly told him that if he opened his month to say that Buck was unaware of the gun, "they would throw the book at him." (Doc. 120). Buck contends that, due to the threat, Callahan refused to testify, and his motion to suppress the firearm was denied as a result. Buck does not explain how his counsel could have forced Callahan to testify under said circumstances;

thus, his ineffective assistance of counsel claim lacks merit.

**B. Actual Innocence**

Also without merit is Buck's claim that he is actually innocent of the firearm charge. As noted, the record reflects that during the guilty plea colloquy, the Court discussed with Buck the elements necessary to establish the firearm charge, the penalties Buck faced if convicted of the firearm charge, and the facts contained in the factual resume regarding the firearm charge. Under oath, Buck testified that he was guilty of the firearm charge. As noted above, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." <u>Blackledge</u>, 431 U.S. at 74.

Notwithstanding his sworn statements at the guilty plea hearing, Buck now argues that the gun in question was owned by his co-defendant, and he did not know that the gun was present in the vehicle at the time of his arrest. (Docs. 120 at 21; 130 at 5-8). In order for a claim of actual innocence to overcome a procedural bar, the petitioner must support his allegations of constitutional error with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). In this case, Buck has submitted the affidavit of William Callahan, his co-defendant. In the affidavit, Callahan asserts "the gun found under my seat was not even known to [Buck]." (Doc. 120 at 26). He also contends that he was brought to the courthouse to testify at Buck's suppression hearing, but Government prosecutors warned him that if he made statements regarding ownership of the firearm, they would throw the book at him. (Id.). According to Callahan, fearing the worst, he refused to make any statement.

Like Buck, Callahan also signed a plea agreement in this case. (Doc. 26). In the plea agreement, Callahan agreed to enter a guilty plea counts 4 and 5 of the indictment charging felon unlawfully in possession of a firearm and using and carrying a firearm in furtherance of a drug trafficking crime. (Id. at 2). Additionally, in the plea agreement, he expressly denied that anyone had threatened him or made any promises to him not expressly contained in the plea agreement. (Id. at 3.).

The record reflects that six weeks after Buck filed the instant motion to vacate, along with the supporting Callahan affidavit, Callahan filed his own motion to vacate, and

included a supporting affidavit signed by Buck. (Docs. 120, 121). In Buck's affidavit, he asserted that the drugs found in the car on the day he and Callahan were arrested belonged to him, and that Callahan had no knowledge they were present. He also asserted that he did not know that the substance, "spice," was illegal in Alabama, and that he did not tell Callahan because he did not intend to share the profits with him. (Doc. 121).

As noted by Magistrate Judge Milling in ruling on Callahan's motion to vacate:

> "After viewing the evidence, the Court notes that a belief in the veracity of the two affidavits would lead to a conclusion that Callahan is innocent. However, the Court finds that the coincidence of the assertions made in these affidavits negates a showing "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327.

(Doc. 128). Judge Milling also found that the factual resume executed by Callahan provided an additional ground for questioning the veracity of the affidavits.[7] (Id.).

As noted *supra*, at Buck's guilty plea hearing, he was advised of the nature of the charges against him, the elements required for each offense, and the penalties he faced if convicted of the offenses. (Doc. 42). Buck also

---

[7] Judge Milling recommended that Callahan's petition be denied, and the recommendation was adopted by the District Court. (Docs. 128, 134).

acknowledged that on February 19, 2014, a search of the vehicle that he and his co-defendant was traveling revealed 300 packs of synthetic cannabinoids in a box in the back seat and a Glock 27 .40 caliber handgun under the passenger's seat, and that he was guilty of the offenses charged. (Id. at 16-17).

Based on the record before the Court, the undersigned finds that Buck has failed to establish actual innocence. As found by Judge Milling with respect to the Buck affidavit, the Callahan affidavit is not 'new reliable evidence' as envisioned by Schlup, 513 U.S. at 324. (Doc. 126 at 4-6). The Schlup Court held that a court may consider how "timing of the submission and likely credibility of the affiants bear on the probability reliability" of the new evidence. Schlup, 513 U.S. at 332. Given that Buck and Callahan, his co-defendant in this action, signed affidavits supporting each other's habeas petitions mere weeks apart, the reliability of this 'new evidence' is suspect in both the timing and credibility of the affiants. Given circumstances surrounding the affidavits, coupled with Buck's sworn testimony at the guilty plea hearing, the Court is unconvinced that "no juror, acting reasonably would have voted to find him guilty beyond a reasonable doubt." See McQuiggins v. Perkins, 569 U.S. 383, 386, 133 S. Ct. 1924,

20

185 L. Ed. 2d 1019 (2013). Accordingly, Buck has failed to meet the threshold for an actual innocence claim.

In sum, the undersigned finds that Buck's guilty plea was knowing and voluntary, and that his ineffective assistance of counsel claims and his claim of actual innocence are without merit.[8]

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**. 28 U.S.C. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an

---

[8] For the same reasons, the undersigned finds that Buck's claim of prosecution misconduct is also not supported by the record.

underlying constitutional claim, "a COA should be issued [only] when the prisoner shows... that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1064, 146 L.Ed.2d 542 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should be issued only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot v. Estelle, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983)), includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.")(internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003).

Buck's petition does not warrant the issuance of a Certificate of Appealability. Reasonable jurists could not debate whether Buck's claims should be resolved in a different manner or that he deserves to proceed further. The recommendation that Buck's claim be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of his claim on the record presented. As a result, Buck is not entitled to a certificate of appealability, and consequently, he should not be permitted to proceed *in forma pauperis* on appeal.

### III. <u>CONCLUSION</u>

For the foregoing reasons, it is recommended that Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 120) be **DENIED**, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Louis Darrell Buck. The undersigned Magistrate Judge further opines that Buck is not entitled to issuance of a Certificate of Appealability.

### <u>Notice of Right to File Objections</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it

must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); **Fed.R.Civ.P.** 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interest of justice." *11th Cir. R. 3-1*. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for that objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this **21st** day of **February, 2018.**

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE