IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal Action No. 14-00227-KD-B |
| | ) |
| LOUIS DARRELL BUCK, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action is before the Court on Defendant Louis Darrell Buck's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) or for home confinement under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621) (doc. 159) and the United States' response (doc. 162). Upon consideration, and for the reasons set forth herein, the motion for compassionate release is dismissed without prejudice and the motion for home confinement is denied.

I. Background

In 2015, Louis Darrell Buck pleaded guilty to Count 1 and 5 of the Indictment charging conspiracy to possess with intent to distribute a controlled substance and use, carry or possession of a firearm in relation to or in furtherance of a drug trafficking felony. On October 30, 2015, he was sentenced to 57 months as to Count 1 and 60 months as to Count 5, to serve consecutive, for a total term of 117 months (doc. 116). Buck is now incarcerated at the Federal Correctional Institution in Talladega, Alabama. His estimated release date is August 6, 2023.

II. Exhaustion

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the

defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" upon finding that there are extraordinary and compelling reasons which warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

Buck does not argue that he has met the exhaustion requirement. He does state "I am sending this [motion] to Warden Nash, to Director of the Southeast Region, and to our residential re-entry manager" (doc. 159, p. 2).

The United States argues that Buck has not exhausted his administrative rights to appeal and, relying upon Buck's statement that he sent a request to the Warden at the same time he filed his motion, 30 days have not elapsed from the Warden's receipt of the request (doc. 162, p. 13). The United States also argues that even if Buck submitted a request which included the same information as his motion, the motion did not include the minimum information required by the BOP before it considers an inmate to have requested compassionate release. (Id.). Additionally, the United States points out that as of May 1, 2020, the BOP had no record of a request from Buck.

The United States also argues that the procedural requirements in 18 U.S.C. § 3582(c) are jurisdictional (Id., p. 14-15). The United States asserts that the "text, context, relevant historical treatment and purpose" of the requirements in § 3582(c) indicate that the statute "sets forth a jurisdictional limitation on the district court's authority to modify a sentence" such that it lacks jurisdiction if the inmate fails to satisfy the requirements (Id., p. 16). The United States maintains that while the time limitation is jurisdictional, as "an exception to the historic and fundamental rule that courts may not revisit a final criminal judgment, the point is ultimately academic" since the statutory requirements "are at least mandatory claim-processing rules" which must be enforced

2

when raised by a party, such as now, by the United States (Id., p. 16).  Under either interpretation, the United States argues that Buck must first meet one of the statutory prerequisites before the Court may consider his motion.

Buck did not date his motion. However, he begins by stating that President Trump signed the Cares Act on March 27, 2020 (doc. 159, p. 1).   Since Buck seeks relief under the Cares Act, in addition to relief under 18 U.S.C. § 3582(c)(1)(A), the motion must have been prepared and sent to the Warden at some time after March 27, 2020 and before April 15, 2020, the postmark date on the envelope.  In that posture, thirty days could not have lapsed before Buck's motion was filed. [1] Since Buck's failed to comply with either of the two statutory requirements, the Court finds that he has not met the necessary prerequisites for consideration of his motion. Accordingly, his motion is dismissed without prejudice for failure to meet the statutory prerequisites.

    III. Compassionate release

However, even assuming that Buck met the statutory prerequisites, he is not entitled to compassionate release.  Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same).   Specifically, the "court may not modify a term of imprisonment once it has been imposed except" as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, - - - Fed. Appx. - - -, 2020 WL 897402, at *2 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release

---

[1] Under the prisoner's mailbox rule, an inmate's motion is deemed filed on the date that it is delivered to prison officials for mailing. Jeffries v. United States, 748 F.3d 1310, 1314 (11th Cir.), cert. denied, 135 S. Ct. 241 (2014).  The Court has no evidence as to the day Buck delivered the motion for mailing.  However, it must have been between March 27, 2020 and April 15, 2020.

with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if the court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

"Extraordinary and compelling" reasons are not defined in the statute.  Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).  Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

Before the First Step Act, the Sentencing Commission promulgated the following policy statement:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>> (1) (A) Extraordinary and compelling reasons warrant the reduction; or . . .
>>
>> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>>
>> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.[2]

The Application Notes to the Policy Statement include four examples of extraordinary and compelling reasons to consider reduction of a sentence under § 3582(c)(1)(A). The defendant's physical, mental, or medical condition may qualify if certain criteria are met. U.S.S.G. § 1B1.13 cmt. n. 1(A). Specifically, if the

> i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. §1B1.13 cmt. n. 1(A).

Buck does not allege that he is terminally ill, that he has a serious functional or cognitive impairment, or that he is experiencing deteriorating physical or mental health because of the aging process such that he cannot care for himself. Buck does allege that he has "advanced asthma and hypertension" (doc. 159, p. 6).

---

[2] Subparagraph(B) provides for consideration of compassionate release if "[i]he defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]" Since Buck is 42 years old, this statute cannot apply to him.

Buck's medical condition may fall within the criteria of Application Note A, if he shows that he is "suffering from a serious . . . medical condition . . . that substantially diminishes" his ability to provide self-care in the correctional facility. U.S.S.G. §1B1.13 cmt. n. 1(A). However, Buck does not provide any evidence as to the seriousness of his conditions or that they affect his ability to care for himself in prison.[3] See United States v. Smith, No. 8:17-CR-412-T-36AAS, 2020 WL 2512883, at *6 (M.D. Fla. May 15, 2020) ("Smith, however, does not allege a terminal illness or that his asthma substantially diminishes his ability to care for himself in prison. Nor does he submit documentary evidence demonstrating that he suffers from severe asthma. As such, Smith fails to demonstrate that his asthma constitutes an extraordinary and compelling reason warranting relief."); United States v. Crawford, 2019 WL 6615188, at *5 (M.D.N.C. Dec. 5, 2019) (finding that Crawford's "medical records reveal a variety of ailments, including Hepatitis C, carpal tunnel syndrome, hypertension, esophageal reflux, urinary tract infection, and osteoarthrosis for which he has received extensive treatment" but Crawford did not demonstrate that "any of his illnesses have substantially diminished his ability to care for himself while incarcerated in the BOP").

The district court may consider the "Age of the Defendant." U.S.S.G. § 1B1.13 cmt. n.1(B). Specifically, whether the "defendant (i) is at least 65 years old); (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Id., cmt. n. 1(B). Since Buck is 42 years old, he does not fall within the criteria of this example (doc. 159, p. 8).

---

[3] The Bureau of Prison's Program Statement No. 5050.50 addressing "Compassionate Release/Reduction in Sentence" Procedures for Implementation of 18 U.S.C. §§ 3582 and 42059g)" identified a "Debilitated Medical Condition" and states that a reduction in sentence "consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is:  Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."

The district court may consider Buck's "Family Circumstances." Id., at cmt. n. (1)(C). Specifically, "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children" and "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.". Id.  Buck does not argue that his family circumstances fall within the criteria of this example.

Last, the district court may consider "Other Reasons" if "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id., cmt. n. (1)(D). Since Buck does not appear to fall within the parameters of (A) through (C), his request may fall under subparagraph (D).

In its present version, subparagraph (D) "leaves identification of other 'extraordinary and compelling reason[s]' to the Director of the Bureau of Prisons." United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at * 3 (D. Me. July 11, 2019).  But now that the First Step Act allows the inmate to file for compassionate release without the BOP's support, it is unclear what "other" reasons can be relied upon for compassionate release.  However, the Court finds that until the Sentencing Commission amends its Policy Statement "those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release." United States v. Fox, 2019 WL 3046086, at *3.

Buck argues that extraordinary and compelling reasons for a reduction in sentence exist because he is over 40 and has "advanced asthma and hypertension", as identified by the Centers for Disease Control and Prevention as a co-morbid condition, which make him vulnerable to the Covid-19 virus and "to have a bad result" if contracted (doc. 159, pgs. 2, 6).  In support, Buck argues that no one at his home has been exposed to Covid-19 and that he can practice social distancing there, but in contrast, three staff members at his prison have tested positive and "there is no way of

7

knowing how many asymptomatic staff have entered this compound bringing Covid-19 with them" (Id., p. 5).[4]

The United States argues that the Covid 19 pandemic does not fall within any of the categories identified in the Sentencing Commission's Policy Statement or Application Notes and since § 3582(c) authorizes a reduction in sentence only if it is consistent with the Policy Statement, Buck's motion should be denied (doc. 162, p. 22-23).  The United States also states that where an inmate has a chronic medical condition identified by the Centers for Disease Control and Prevention as elevating the risk of serious illness from Covid 19, that condition may be an extraordinary and compelling reason for compassionate release, even if it would not qualify absent the risk of Covid-19 (Id., p. 23-24).  The United States points out, however, that Buck has not provided sufficient documentation of his medical conditions to enable the Court to consider his claim.  (Id., p. 24).  The United States also argues that Buck has not shown that his medical conditions substantially diminish his ability to care for himself in the correctional facility or that he is unable to access care for his conditions (Id., p. 25).

Buck's potential to contract Covid 19 because of the close living conditions and documented Covid 19 cases at FCI Talladega[5] in combination with medical conditions that are severe enough to be considered a serious medical condition that elevates his risk of serious illness or mortality, may be comparable or analogous to the criteria identified in the Policy Statement.  The CDC has identified persons who "might be at an increased risk for severe illness from Covid-19" as persons

---

[4] At present, three inmates and four staff members have tested positive for Covid 19 and six staff members have recovered, but no deaths are reported. https://www.bop.gov/coronavirus/ (last visited June 25, 2020).

[5] "The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices." United States v Bueno-Sierra, No. 93-CR-00567, 2020 WL 2526501, at *2 (S.D. Fla. May 17, 2020).

with hypertension or high blood pressure and moderate to severe asthma. People of Any Age with Underlying Medical Conditions, [6] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last revised June 25, 2020).  However, Buck has not provided the Court with any evidence[7] to support his statement that he has underlying serious medical conditions such that he "might be at an increased risk for severe illness from Covid-19." Id. Moreover, the BOP is in a better position to evaluate Buck's risks.

IV.  CARES Act

Buck also moves for release from prison to serve the remainder of his sentence on home confinement as implemented by the CARES Act (doc. 159).  The United States argues that the CARES Act does not authorize this Court to direct the BOP to place Burks in home confinement but instead the BOP has the statutory authority to make that determination (doc. 162, p. 26-27).

Previously, under 18 U.S.C. § 3624(c)(2), the BOP had authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."   Under the CARES Act, effective March 27, 2020, the BOP Director was permitted to lengthen the maximum amount of time a prisoner may be placed in home confinement, in certain circumstances and during a specified period of time after the declaration of national emergency due to Covid 19, if the Attorney General found that emergency conditions would materially affect the

---

[6] "Based on what we know at this time, people with the following conditions **might be at an increased risk** for severe illness from COVID-19:  Asthma (moderate-to-severe) . . . Hypertension or high blood pressure. . . " https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last revised June 25, 2020) (emphasis in original).

[7] The Individualize Reentry Plan – Program Review indicates that Buck's "Current Care Assignments" are "healthy or simple chronic care" and his "Current Medical Duty Status Assignments" are "no medical restr - - regular duty" (doc. 159, p. 8).

functioning of the BOP.  CARES Act, Pub. L. 116-136, § 12003(b)(2).[8]  On April 3, 2020, Attorney General William Barr made this finding and gave the Director authority to exercise this discretion.  The Director was directed to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations." Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020), https://www.justice.gov/file/1266661/download (doc. 162, p. 31-33, Exhibit A).

However, the CARES Act did not give this Court authority to direct the BOP to place an inmate in home confinement.  Under 18 U.S.C. § 3621(b), the BOP "shall designate the place of the prisoner's confinement".  Therefore, Buck's motion for relief pursuant to the CARES Act is denied.  See United States v. Allen, 2020 WL 2199626, at *1 (S.D. Ga. May 6, 2020) ( finding that a "request for home confinement under the CARES Act is different than a reduction-in-sentence (RIS) request based upon compassionate release" and that the statutes used to implement the CARES Act, 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541, "do not authorize a federal court to order the BOP to release a prisoner.")

Additionally, Buck argues that he meets the criteria for home confinement and that his "case manager was wrong to advise" him that he was "not eligible for consideration for home confinement under the criteria lined out by the Attorney General under the Cares Act" (doc. 159, p. 6-7).  To the extent that Buck's argument could be construed as a challenge to the BOP's decision, this Court is without jurisdiction to consider his argument.  A federal prisoner may challenge the

---

[8] "Home Confinement Authority.  During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United

manner of the execution of his sentence in a petition for a writ of habeas corpus under 28 U.S.C. § 2241. However, a § 2241 petition "may be brought only in the district court for the district in which the inmate is incarcerated." <u>Fernandez v. United States</u>, 941 F.2d, 1488, 1495 (11th Cir. 1991). Since Buck is not incarcerated in the Southern District of Alabama, this Court lacks jurisdiction.

**DONE** and **ORDERED** this 26th day of June 2020.

<u>s / Kristi K. DuBose</u>
KRISTI K. DuBOSE
CHIEF UNITED STATES DISTRICT JUDGE

---

States Code, as the Director determines appropriate." CARES Act, P.L. 116-136, § 12003(b)(2) (2020).